UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| CHRISTOPHER FOSTER, | : | Case No. 2:22-cv-2153 |
| Plaintiff, | : | |
| vs. | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Caroline H. Gentry |
| OHIO D.R.C., ET AL., | : | |
| Defendants. | : | |

**ORDER**

This civil rights action, filed by state prisoner Christopher Foster, is before the Court for an initial screening of the complaint.[1] 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). The initial screening must be completed before Defendants are served and the case can proceed.

Several issues complicate the screening process here. An overriding complication is that Plaintiff's submissions to the Court are not entirely comprehensible. Most importantly, as explained further below, it is not clear what claims Plaintiff is asserting in this action. Therefore, the undersigned **ORDERS** Plaintiff to file a Second Amended Complaint that clearly identifies each claim he is asserting in this lawsuit, and also identifies the Defendant(s) being sued for each such claim. *See* Fed. R. Civ. P. 12(e) (allowing the Court to grant a defendant's motion for more definite statement and order plaintiff to submit an amended complaint if the existing complaint is "so vague or ambiguous that the [defendant] cannot reasonably prepare a response"). The undersigned will then screen that pleading as required by 28 U.S.C. §§ 1915A(a) and 1915(e)(2).

---

[1] The District Court considered ECF No. 8 to be the operative Complaint. (Report and Recommendation, ECF No. 15, PageID 106.) For purposes of this opinion, however, the undersigned has considered ECF Nos. 6, 7, 8 and 12 together as constituting the complaint.

Plaintiff may be asserting a claim of intentional discrimination under Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). "Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (quoting 42 U.S.C. § 12132). "The ADA applies to both federal and state prisons." *Id*. (citing *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 209-10 (1998)). In summary:

> Title II of the ADA prohibits intentional disability discrimination by a public entity or in the context of "services, programs, or activities of a public entity...." 42 U.S.C. § 12132 (2018). Similarly, Section 504 of the Rehabilitation Act prohibits intentional disability discrimination under "any program or activity receiving Federal financial assistance" or exclusion from participation in any such program or activity "solely by reason of" a disability. 29 U.S.C. § 794(a) (2018).
>
> A claim of intentional discrimination under Title II requires proof that the plaintiff 1) had a qualifying disability, 2) was otherwise qualified to participate in the public program, service, or activity at issue, and 3) was excluded from participation in the public program or was discriminated against by the public entity because of his or her disability. *Fritz v. Michigan*, 747 F. App'x 402, 404 (6th Cir. 2018). A claim under Section 504 of the Rehabilitation Act requires the same showing except that the plaintiff must prove the discrimination was "solely" because of the disability. *Id.* Sole causation is not a requirement for a Title II claim. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015).

*Shaffer v. City of Columbus*, 444 F. Supp. 3d 872, 879 (S.D. Ohio 2020).

Plaintiff also may be asserting a claim for a reasonable modification or accommodation under Title II. *See Larson v. Eppinger*, No. 2:20-cv-4997, 2021 WL 2659998, at *5 (S.D. Ohio June 29, 2021) (citing A*nderson v. City of Blue Ash*, 798 F.3d 338, 353-56 (6th Cir. 2015)) ("the Sixth Circuit implicitly acknowledged that Title II recognizes distinct claims for 'reasonable modifications' and intentional discrimination.").

Plaintiff also may be asserting a claim under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution for deliberate indifference to a serious medical need:

> The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle* [*v. Gamble*, 429 U.S. 97, 103 (1976)]. But mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment. In those circumstances, a constitutional violation arises only when the doctor exhibits "*deliberate indifference* to a prisoner's serious illness or injury," *id.* at 105, 97 S.Ct. 285 (emphasis added), that can be characterized as "obduracy and wantonness" rather than "inadvertence or error in good faith," *Wilson* [*v.* Seiter, 501 U.S. 294, 299 (1991)] (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). To establish a prison official's deliberate indifference to a serious medical need, an inmate must show two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence. *Id.* at 834-35, 114 S.Ct. 1970.

*Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

There are several reasons why it is necessary for Plaintiff to clearly identify the claims he is asserting in this lawsuit. <u>First</u>, the Court must know what claims are being pled before it can conduct the required screening. Similarly, Defendants who are required to answer the Complaint must know what claims are being pled before they are required to file a responsive pleading. *See* Fed. R. Civ. P. 12(e) (allowing defendant to file a motion for more definite statement).

<u>Second</u>, the Court must know what claims are being pled to determine whether this lawsuit is properly venued in the United States District Court for the Southern District of Ohio. *See* 28 U.S.C. § 1391(b) (generally requiring a case to be brought where a defendant resides or where the events giving rise to the claims occurred). For example, claims about disability discrimination, medical care or retaliation may be properly venued in the United States District Court for the Northern District of Ohio, where the Toledo Correctional Institution is located.

<u>Third</u>, Plaintiff has repeatedly suggested that he has not presented his actual claim to the Court yet. (*E.g.*, ECF No. 6, PageID 37 (I cannot continue or complete this Complaint until I first attain a preliminary injunction to get court access in the first place…"); ECF No. 8, PageID 57

3

("I reserve this Completion of Complaint matter until I can attain a preliminary injunction…"); ECF No. 8, PageID 59 ("I shall resume this Complaint process once I get access to Court by injunction . . . I reserve the filing process here until the Court brings the Defendant(s) into compliance on an administrative basis that gives me Court access to participate in this case.")). Plaintiff has also hinted at a variety of potential claims.[2] It is unclear whether these claims (seemingly against many parties) could appropriately be asserted in a single lawsuit under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 18 (joinder of claims); Fed. R. Civ. P. 20 (joinder of parties); and Fed. R. Civ. P. 21 (misjoinder and nonjoinder of parties).

Fourth, the Court must know what claims are being pled to determine whether there is a nexus between the "imminent danger" identified by Plaintiff—which is a required allegation to overcome the bar on allowing a prisoner with "three strikes" to proceed *in forma pauperis*—and the claims asserted in this lawsuit. *See Sweatt v. Hininger*, No. 22-5635 (6th Cir. Jan. 27, 2023) (citing *Lapine v. Waino*, No. 17-1636, 2018 WL 6264565, at *2 (6th Cir. Oct. 11, 2018) and *Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009)) (denying motion to proceed *in forma pauperis* because "Sweatt did not show a nexus between the imminent danger and the claims in his complaint."); *Jenkins v. Sherry*, No. 2:21-cv-239, 2022 WL 263211, at *4 (W.D. Mich. Jan. 28, 2022) (discussing the nexus requirement in several circuits).[3] In other words, a plaintiff

---

[2] *See generally* ECF No. 12 (discussing disability discrimination, retaliation, federal funding, and the Department of Justice's complaint process; his criminal defense attorney's investigation in 2011 about a Fourth Amendment seizure; a police internal affairs issue; that he had a right to resist and was innocent of a crime; an ADA notice he should have received from appointed counsel in 2012; the dismissal of a federal case in 2015; an attack by the Warden and staff in 2016; an attack in 2017; staff denying or infecting his food in 2018; former President Trump's policy of insurrection in 2020; the prison's discontinuation of his route to the dining hall and medications for chronic care in 2020; a "Trade / Service Mark"; a legal mail issue; lost wages; an issue about a bullet he removed from his chest; failure to provide medical care after that event and for pre-existing issues; and retaliation for filing this lawsuit).

[3] *Jenkins* cites the following:

4

cannot obtain or maintain *in forma pauperis* status if he pleads "imminent danger" with respect to one issue and yet asserts claims that arise from totally separate issues. *See Pettus*, 554 F.3d at 297 (rejecting argument that "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy.").

---

*Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (seminal case, holding that there [must] be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint); *Andrews v. Cervantes*, 493 F.3d 1047, 1053-54 (9th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (holding that a prisoner does not meet the imminent-danger exception when he is no longer facing risk from the defendants he sues, because he has since been transferred to a different prison); *see also Pinson v. U.S. Dep't of Justice*, 964 F.3d 65, 71 (D.C. Cir. 2020) (holding that a nexus between the alleged imminent danger and the claims raised is required to avoid the conclusion that, at the same time it established the three-strikes rule, Congress intended to " 'engraft[ ] an open-ended exception that would eviscerate the rule' " (quoting *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 315 (2d Cir. 2001))); *Meyers v. Comm'r of Soc. Sec. Admin.*, 801 F. App'x 90, 94-95 (4th Cir. 2020) (citing *Pettus*, inter alia, and holding that "the better reading of the Imminent Danger Provision is that it requires a relationship between the imminent danger alleged in the IFP application and the facts alleged and relief sought in the underlying claim"); *Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (citing *Pettus*).

Although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with <u>the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision</u>. This nexus requirement does not add a judicially created element to the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. 554 F.3d at 297.
. . .
As applied to § 1915(g), the imminent-danger exception must be read in light of the strong general thrust of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, § 1915(g) itself states that "[i]n no event shall a prisoner bring a civil action or appeal..." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. <u>Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named defendants</u>. *See Pettus*, 554 F.3d at 297; *Pinson*, 964 F.3d at 71. Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule.

*Jenkins*, 2022 WL 263211, at *4-5 (emphasis added).

5

Here, the Court found that Plaintiff sufficiently pled imminent danger in only one respect: his "allegations that prison medical staff have refused him treatment for his chronic pain conditions." (Opinion & Order, ECF No. 23, PageID 183). That issue appears to have a sufficient nexus to a claim under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need in violation of the Eighth Amendment. ***However, Plaintiff has indicated in several filings that he is not asserting a claim under Section 1983.*** (ECF No. 24, PageID 187 ("not only is this an ADA suit based on post-2010 amendment, this is not such a civil rights suit…"); ECF No. 24, PageID 191 ("it is not a typical, or 1983, filing"); ECF No. 24, PageID 192 ("the 42USC1983 stigma [should be] removed too, because that is the statute associated with the same race, status, etc., limit of typical consideration that has nothing to do with the crisis faced in this Judicial inquiry about attaining emergency justice.  This is not (ECF No. 22) a race, or 1983, etc., suit . . ."); ECF No. 26, PageID 209 ("this is not a 1983 claim"); ECF No. 27, PageID 223 ("neither case is 1983 based"—referring to this case and a separately pending habeas corpus matter); *but see* ECF No. 12, PageID 68 (citing § 1983 with respect to his "imminent danger issue")).

Therefore, to facilitate the required initial screening in this case, Plaintiff is **ORDERED** to submit to the Court a single document that is titled Second Amended Complaint and clearly identifies Plaintiff's claims, the Defendants, the nature of the case, and the relevant facts with respect to each claim against each Defendant. Plaintiff shall clearly label and number each claim and state which Defendant(s) it is asserted against. If Plaintiff's claims arise under Section 1983, the ADA/RA, or both, he should so state. The Second Amended Complaint will supersede (or replace) Plaintiff's previous pleadings. *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014). **Plaintiff is expressly cautioned that he cannot wait to assert his claims until a later stage in the litigation, and instead must plead them now or risk waiving them.**

To assist Plaintiff, the Clerk of Court is **DIRECTED** to provide him with a blank copy of pro se complaint form and the prisoner complaint form for his use. Plaintiff is **ORDERED** to submit a Second Amended Complaint **within thirty days** of the date of this Order. If Plaintiff fails to submit a Second Amended Complaint or seek an extension before that deadline, then the undersigned may recommend that this matter be dismissed for failure to prosecute.

Finally, the undersigned notes that this case will not proceed until the Court has screened the Second Amended Complaint, determined what claims may go forward, and ordered that all properly-named Defendants be served. Nevertheless, Plaintiff has filed numerous motions: (1) Motion for Miscellaneous Relief (ECF No. 24); (2) Motion for Expedited Relief (ECF No. 29); (3) Renewed Motion to Proceed While Black (ECF No. 31); (4) Motion to Preserve Claims (ECF No. 33); (5) Motion to Present Proof of Contract (ECF No. 34); (6) Motion to Reserve a Sanction Filing (ECF No. 38); and (7) Motion to Enforce the Marbley Rule (ECF No. 39). Because no Defendants have been served, they have not had the opportunity to oppose these Motions.

Therefore, the Court **DENIES** all of Plaintiff's pending Motions (ECF Nos. 24, 29, 31, 33, 34, 38, and 39) as **PREMATURE**. Plaintiff may refile these Motions, if he chooses to do so, after all Defendants have been served and responded to the operative Complaint. **Other than the Second Amended Complaint, Plaintiff is DIRECTED not to file any documents in this case until the Court has completed the required initial screening, absent extraordinary cause.**

The Clerk of Court is **DIRECTED** to hold service of the operative Complaint until further order of this Court.

    **IT IS SO ORDERED.**

June 16, 2023                             */s/ Caroline H. Gentry*
                                                   CAROLINE H. GENTRY
                                                   UNITED STATES MAGISTRATE JUDGE