# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER FOSTER, | : Case No. 2:22-cv-2153 |
| Plaintiff, | : |
| | : Judge Algenon L. Marbley |
| vs. | : Magistrate Judge Caroline H. Gentry |
| | : |
| OHIO DEPARTMENT OF | : |
| REHABILITATION AND | : |
| CORRECTION, *et al.*, | : |
| | : |
| Defendants. | : |

## THIRD REPORT AND RECOMMENDATION

This matter is before the undersigned Magistrate Judge to consider several filings submitted by *pro se* Plaintiff Christopher Foster, including the Third Amended Complaint (ECF No. 60 & 63) and voluntary dismissals of four defendants (ECF Nos. 68, 81). For the reasons discussed below, the undersigned **RECOMMENDS** that the Court **DISMISS** the Third Amended Complaint **without prejudice**; **DENY** Plaintiff's remaining motions (ECF Nos. 64, 74, 75, 77, 82 & 87) as moot; and **TERMINATE** this case.

**I.  BACKGROUND**

Plaintiff filed this action in May 2022. (ECF No. 1 at PageID 11). He is a state prisoner who is proceeding without the assistance of counsel. (*Id.* at PageID 2.) Because Plaintiff has accumulated at least three "strikes" under the Prison Litigation Reform Act ("PLRA"), he cannot proceed *in forma pauperis* unless his complaint sufficiently alleges that he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

In February 2023, the Court determined that only one of Plaintiff's allegations—namely, "that prison medical staff have refused him treatment for his chronic pain conditions"—was "sufficient to make a showing that he is 'under imminent danger of serious physical injury.'" (ECF No. 23 at PageID 183). Based on that determination and Plaintiff's financial status (*see* ECF No. 37), the Court allowed Plaintiff to proceed *in forma pauperis* in June 2023. (ECF No. 40). The Court's permission to proceed *in forma pauperis* was based on, and limited to, "allegations that prison medical staff have refused [Plaintiff] treatment for his chronic pain conditions." (ECF No. 23 at PageID 183).

When the case was filed, Plaintiff was housed at Toledo Correctional Institution. (ECF No. 1). He was subsequently transferred to Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio. (*See* ECF Nos. 48, 82, 86). These correctional institutions fall under the jurisdiction of the Ohio Department of Rehabilitation and Correction ("ODRC"),[1] although NEOCC is run by a private entity called CoreCivic. *See Carey v. CoreCivic*, No. 4:23-cv-1386, 2024 WL 2115077, at *2 (N.D. Ohio May 10, 2024) ("NEOCC is a private prison owned and operated by CoreCivic.").

In July 2024, the undersigned Magistrate Judge screened Plaintiff's Second Amended Complaint ("SAC," ECF No. 42) to determine whether (1) it stated one or more claims on which relief could be granted against a proper party,[2] and (2) such claim(s) had a nexus to Plaintiff's allegations that he was denied treatment for his chronic

---

[1] *See* https://drc.ohio.gov/about/facilities/facilities (last visited August 6, 2025).

[2] The SAC named as Defendants the ODRC, Congress, U.S. Attorney General Merrick Garland in his official capacity, and the Cincinnati Police Department. (ECF No. 53, PageID 446-447).

2

pain condition. (Second Report and Recommendation, ECF No. 53). The undersigned found that the allegations in the SAC did not meet the latter requirement and specifically noted that Plaintiff "has not asserted a Section 1983 claim for deliberate indifference to a serious medical need under the Eighth Amendment to the U.S. Constitution." (*Id*. at PageID 452-454). However, in the interests of justice, the undersigned recommended that Plaintiff be given a final chance to plead claims that have the required nexus:

> The undersigned **RECOMMENDS** that Plaintiff be given one final opportunity to assert claims that have a nexus to the claimed imminent danger of serious physical injury (lack of medical treatment for chronic pain), are asserted against proper defendants, and contain factual allegations sufficient to state a plausible claim upon which relief may be granted. If Plaintiff fails to amend his Complaint accordingly, then the undersigned **RECOMMENDS** that this case be terminated.

(*Id*. at PageID 459).

After overruling Plaintiff's objections, the District Judge adopted the Second Report and Recommendation. (ECF No. 83). The District Judge dismissed Plaintiff's Section 1983 claims with prejudice, and Plaintiff's claims under Title II of the ADA without prejudice." (*Id*. at PageID 709). However, the District Judge gave Plaintiff one last chance to plead viable claims with the required nexus. (*Id.* at PageID 705-706).

Shortly after Plaintiff objected to the undersigned's Second Report and Recommendation, he filed a document titled "Emergency Complaint for Joinder." (ECF No. 60). A few weeks later, he filed a document titled "PART TWO OF (PageID#494) TIMELY"]),[3] which appears to be a supplement to the Emergency Complaint. (ECF No.

---

[3] PageID 494 is page 3 of the Third Amended Complaint. (*See* ECF No. 60).

3

63). The undersigned will refer to these documents collectively as Plaintiff's Third Amended Complaint, or "TAC." (ECF No. 60 & 63). <u>For the sake of clarity, the undersigned **DIRECTS** the Clerk of Court to file Document Numbers 60 & 63 together and identify them on the docket as Plaintiff's Third Amended Complaint.</u>

**II.     NOTICES OF VOLUNTARY DISMISSAL**

The caption of the Third Amended Complaint identifies five Defendants: (1) ODRC; (2) Cincinnati Police; (3) Congress; (4) Core Civic; and (5) the DOJ/Attorney General for U.S.[4] (ECF No. 60 at PageID 492). However, Plaintiff later filed two documents that appear to dismiss four of these five defendants. (ECF Nos. 68, 81). Specifically, in a filing titled "FOSTER CONCEDES IN PART," Plaintiff dismissed his claims against Congress and the Cincinnati Police Department, without prejudice. (*See* ECF No. 68 at PageID 607, 609). And in a subsequent filing titled "DISMISSING CORE CIVIC POLICE & DOJ," Plaintiff dismissed these defendants. (ECF No. 81).

The undersigned will construe these documents as notices of dismissal under Federal Rule of Civil Procedure 41(a)(1). Because such notices of dismissal are self-effectuating, *see Wellfount Corp. v. Hennis Care Ctr. of Bolivar, Inc.*, 951 F.3d 769, 772 (6th Cir. 2020), no further action is needed to dismiss Plaintiff's claims against the Cincinnati Police Department, Congress, Core Civic, and the DOJ/Attorney General.

Accordingly, <u>the undersigned **DIRECTS** the Clerk of Court to **TERMINATE** Congress and the Cincinnati Police Department as defendants on the docket as of October</u>

---

[4] Plaintiff appears to refer to the DOJ and the Attorney General as the same defendant. (*E.g.*, TAC at PageID 493 [listing this defendant as "Department of Justice/Attorney General]).

16, 2024, and **TERMINATE** Core Civic Police and the Department of Justice/Attorney General as defendants on the docket as of February 19, 2025. Defendant ODRC is the sole remaining defendant in this case.

## III. INITIAL SCREEN OF THE THIRD AMENDED COMPLAINT

Next, the undersigned will screen Plaintiff's claims in the Third Amended Complaint (ECF No. 60 & 63). The applicable standards were set forth in the undersigned's Second Report and Recommendation (ECF No. 53 at PageID 443-446) and are incorporated herein by reference. Although the claims asserted in the TAC are not entirely clear, they appear to be brought under the "Post 2010 version of Title II" of the Americans with Disabilities Act ("ADA"). (*See* ECF No. 60 at PageID 494 [heading]).

### A. Contractual claim

Plaintiff sues ODRC in a "public entity capacity" and states that it is a "recipient of Federal financial assistance." (ECF No. 60 at PageID 494). Plaintiff claims that ODRC is "liable for implied contractual breach failures of the ADA coextensively through Section 504 [of the Rehabilitation Act], in light of financial assistance conditions." (*Id*.)

The undersigned construes Plaintiff's contractual claim as alleging that ODRC, a public entity, is liable for Core Civic's alleged failure to operate a prison (*i.e.,* NEOCC) that meets the accessibility standards set forth in the ADA and the Rehabilitation Act. (*See* ECF No. 60 at PageID 494 ["ODRC is liable for Core Civic . . . as to Core Civic's power to incarcerate me in an inaccessible manner …."]).

Although Core Civic operates NEOCC,[5] it does not run Toledo Correctional Institution,[6] which was where Plaintiff was incarcerated when he filed this case.[7] As this Court has explained, Plaintiff's claim(s) must have a nexus to the imminent danger—namely, the failure to provide medical care for his chronic pain conditions. (ECF No. 23 at PageID 183; ECF No. 83 at PageID 704-705). Significantly, this imminent danger must have existed when this case was filed. (ECF No. 83 at PageID 704).

Because Plaintiff was not housed at NEOCC when this lawsuit was filed, he cannot assert a claim based upon ODRC's relationship with NEOCC or Core Civic. The undersigned therefore **RECOMMENDS** that all contractual claims concerning ODRC's relationship with NEOCC or Core Civic be **DISMISSED** without prejudice.

B.     **Employment claims**

Plaintiff claims that he has been denied employment-based accommodations. (ECF No. 60 at PageID 497-99). He alleges that after the DOJ rejected his "employment accommodation complaint" he filed a federal lawsuit, apparently in 2020 or 2023.[8] (*Id*. at

---

[5] *See* https://www.corecivic.com/facilities/northeast-ohio-correctional-center (last visited Aug. 7, 2025).

[6] *See* https://drc.ohio.gov/about/ facilities/toledo-correctional/toledo-correctional. (*See* ECF No. 1 at PageID 1).

[7] (*Compare* ECF No. 1 at PageID 1 [providing his address at the Toledo Correctional Institution] *with* ECF No. 48 at PageID 399 [stating, in January 2024, that he expected to be moved to NEOCC]).

[8] It is unclear to which lawsuit Plaintiff is referring. *See, e.g., Foster v. Ohio*, No. 2:23-cv-433, 2023 WL 4757602, at *1 (S.D. Ohio July 26, 2023):

> [H]e filed a document entitled "Affidavit of Federal Status," in which he asserts that he is a "United States prisoner and Federal employment applicant, held in a state prison," rather than a state prisoner. (ECF No. 7, PageID 48, 45).

*See also Foster v. Trump*, No. 3:20-cv-532, 2021 WL 857047, at *1 (N.D. Ohio Mar. 8, 2021):

PageID 496). He explains that he "filed for Federal employment to be given an Office that would allow [him] to supervise all operations of Federally funded . . . operations [concerning] persons with disabilities." (*Id*. at PageID 497). Plaintiff seeks to run an "Office of Deterrent Investigations and Enforcement" (*id*. at PageID 507) that would "permanently and prospectively suppress an insurrection policy created by then-President Trump." (*Id*. at PageID 496). Plaintiff asks to have his Office "up and running" within thirty days, whether he is in prison or not. (*Id*. at PageID 509). "The insurrection policy is to be suppressed in full," Plaintiff says, "because its existence caused [him] actual ongoing imminent danger on the basis of [his] disability." (*Id*. at PageID 496). Plaintiff also states that he is "in imminent danger of more physical harm at this very moment due to a failure to have access to employment, also investigation, and responsible personnel accommodations." (*Id*. at PageID 504).

The undersigned cannot discern in any of these allegations a non-frivolous, plausible claim against ODRC that has a nexus to the claimed imminent harm. The undersigned therefore **RECOMMENDS** that all claims concerning Plaintiff's asserted federal employment or application for employment be **DISMISSED** without prejudice.

---

[Plaintiff's motion is] incomprehensible. He states that the Executive branch and the judicial branch are to handle ADA matters purely in an administrative capacity. He contends Congress is responsible for the actions of the judiciary. He also states he is using the federal employee function under 5 U.S.C. § 2105(a)(2).

He contends permanent federal employment through injunction does not involve NCAA or voluntary resignation due to admitted misconduct. He asserts Title II requires meaningful accommodation to access to benefits without consideration of motivation or intent. Plaintiff alleges the Trump administration had a duty to provide annual notice under various statutes but replaced this with notice under other statutes. He claims the Trump administration teamed up with Aramark to deny him food and proper medical care in prison. Plaintiff states he has the right to offer proof and indicates this is a class action.

7

C.  **Denial of treatment claims**

Plaintiff alleges that unnamed officials at ODRC "instantly put to an end" his access to medical care and food when they "got notice around April 1st, 2020, that I filed for Federal employment …." (ECF No. 60 at PageID 497). He alleges that ODRC "discontinued my access to the route needed to continue getting to medical hospital of the facility, so that I could obtain treatment for my severe neuropathy (GSW) pain." *Id*. Therefore, Plaintiff filed a lawsuit in November 2020 "to complain that the State was not allowing me treatment for gunshot wound neuropathy, or accessibility." (*Id*.)

To the extent that Plaintiff seeks to assert a Section 1983 claim against ODRC based upon these allegations, it cannot proceed. This Court has already explained that ODRC is not subject to suit under Section 1983 and so dismissed all Section 1983 claims against ODRC with prejudice. (ECF No. 83 at PageID 706-07). Further, Plaintiff has not named one or more individual defendants who are officials or employees of ODRC and therefore could be sued under Section 1983 for deliberate indifference to a medical need.

Plaintiff also has not alleged sufficient facts to state a plausible claim against ODRC under Title II of the ADA. Courts are divided over the showing that is needed to state a Title II ADA claim based upon a failure to provide access to medical care. *See Miller v. Aranas*, 2021 U.S. Dist. LEXIS 53063, at *41-47 (D. Nev. Feb. 5, 2021) (citing and discussing cases). But regardless of what standard the Court applies, it is not met here. Plaintiff's vague and conclusory allegations that he was denied access to a route to the hospital do not include enough facts to state a plausible claim. This is particularly true because the correctional institution is a prison and limited access to certain locations is

8

both expected and required. Nor has Plaintiff alleged that he was denied access to medical care because of his disability. To the contrary, Plaintiff has alleged that he was denied care because of his application for employment. Finally, Plaintiff has not alleged that the denial of access to medical care, which occurred in 2020, was continuing to occur when he filed this lawsuit in 2022.

The undersigned therefore **RECOMMENDS** that all claims concerning the alleged denial of treatment be **DISMISSED** without prejudice.

### D. Post-filing claims

The Third Amended Complaint includes allegations about medical treatment that Plaintiff either received or did not receive at NEOCC in 2024. (ECF No. 60 at PageID 499-502). It also includes allegations about Plaintiff's conditions of confinement in July 2024, when he allegedly had no wifi or law library access and was given an "inoperable" cell. (*Id*. at PageID 502-04). Because these events occurred after this case was filed in March 2022, they cannot provide the required nexus to the claimed imminent harm. The undersigned therefore **RECOMMENDS** that all claims concerning events that took place after this lawsuit was filed in March 2022 be **DISMISSED** without prejudice.

### IV. RECOMMENDATION TO TERMINATE THIS CASE AND DENY ALL PENDING MOTIONS AS MOOT

For the reasons stated above, Plaintiff's claims in the Third Amended Complaint do not bear a nexus to the claimed imminent harm. Because Plaintiff is not barred from bringing these claims in a federal lawsuit where he pays the filing fees (and does not proceed *in forma pauperis*), the undersigned recommends that the claims be dismissed

9

without prejudice. However, because the Court has given Plaintiff multiple opportunities to assert plausible claims with a nexus to the claimed imminent harm, and he has not done so, the undersigned **RECOMMENDS** that this case be **TERMINATED**. The undersigned further **RECOMMENDS** that all pending motions (ECF Nos. 64, 74, 75, 77, 82 & 87) be **DENIED AS MOOT**.

V.      **CONCLUSION**

In sum, the undersigned **DIRECTS** the Clerk of Court as follows:

1. File Document Numbers 60 & 63 together and identify them on the docket as Plaintiff's Third Amended Complaint;

2. Terminate Congress and the Cincinnati Police Department as defendants on the docket as of October 16, 2024; and

3. Terminate Core Civic Police and the Department of Justice/Attorney General as defendants on the docket as of February 19, 2025.

In addition, the undersigned **RECOMMENDS** that the District Judge:

1. **DISMISS** all claims in the Third Amended Complaint without prejudice;

2. **DENY** all motions (ECF Nos. 64, 74, 75, 77, 82 & 87) as moot; and

3. **TERMINATE** this case.

Plaintiff may file objection to these recommendations, as described below. However, because he has consistently failed to comply with the Court's orders, the undersigned will impose limitations. Plaintiff may only file **ONE DOCUMENT** that objects to this Third Report and Recommendation and he must file it on or before

10

**September 15, 2025**. Any submitted documents that do not comply with these limitations may be stricken from the record or disregarded.

    **IT IS SO RECOMMENDED.**

                                    */s/ Caroline H. Gentry*
                                    Caroline H. Gentry
                                    United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).