IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER FOSTER, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:22-cv-02153 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| OHIO DEPARTMENT OF | : | Magistrate Judge Caroline H. Gentry |
| REHABILITATION AND CORRECTION, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter comes before this Court on Magistrate Judge Gentry's Report and Recommendation (ECF No. 88) that this Court dismiss Plaintiff Christopher Foster's Third Amended Complaint (ECF Nos. 60, 63), Plaintiff's Objections thereto (ECF Nos. 92, 93), as well as Plaintiff's remaining motions (ECF Nos. 64, 74, 75, 77, 82, 87, 89, 90).  Upon independent review, and for the reasons stated below, this Court **OVERRULES** Plaintiff's Objections, **ADOPTS AS MODIFIED** the Report and Recommendation, **DISMISSES WITHOUT PREJUDICE** Plaintiff's Third Amended Complaint, **DENIES AS MOOT** Plaintiff's outstanding motions, and **DIRECTS** the Clerk of Court to **TERMINATE** this case.

I.  BACKGROUND

This Court presumes a general familiarity with the background and factual nature of this case.  (*See* ECF Nos. 23, 83).  Plaintiff Christopher Foster, proceeding *pro se*, is currently an inmate at the Northeast Ohio Correctional Center in Youngstown, Ohio.  (*See* ECF Nos. 76, 78). On May 11, 2022, Mr. Foster sought to proceed *in forma pauperis* before this Court while he was an inmate at the Toledo Correctional Institution in Toledo, Ohio.  (ECF No. 1 at 1; *see* ECF

No. 88 at 1–2). As the Magistrate Judge points out, both the Northeast Ohio Correctional Center and the Toledo Correctional Institute fall under the jurisdiction of the Ohio Department of Rehabilitation and Correction ("ODRC").[1] The Northeast Ohio Correctional Center is operated by a private entity called CoreCivic, Inc. ("CoreCivic").[2] (ECF 88 at 2).

### A. Three Strikes under the Prison Litigation Reform Act

Mr. Foster has previously, on at least three occasions, brought actions as a prisoner that were dismissed either as frivolous, malicious, or for failure to state a claim upon which relief could be granted. (ECF No. 4 at 3). Thus, Mr. Foster had already accumulated at least three "strikes" under the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)–(h), and could proceed *in forma pauperis* only after showing that he was "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); (ECF Nos. 15 at 2–4; 23 at 2). In his initial filing on May 11, 2022, Mr. Foster asserted in part that he was under "imminent danger." (ECF No. 1 at 4).

On February 13, 2023, this Court found that *one* of Mr. Foster's allegations, that prison medical staff had refused him treatment for his chronic pain conditions, was "sufficient to make a showing" that he was under imminent danger of serious physical injury under the Prison Litigation Reform Act. (ECF No. 23 at 7). The Magistrate Judge permitted Mr. Foster to proceed *in forma pauperis* on June 16, 2023, (ECF No. 40), and Mr. Foster was ordered to cease filing documents other than the Second Amended Complaint so that the Magistrate Judge could complete the required initial screening. (ECF No. 41).

---

[1] *Facilities and Institutions*, Ohio Department of Rehabilitation and Correction, https://drc.ohio.gov/about/facilities/facilities (last visited Sept. 25, 2025).
[2] *Northeast Ohio Correctional Center*, CoreCivic, https://www.corecivic.com/facilities/northeast-ohio-correctional-center (last visited Sept. 25, 2025).

B.     **Second Amended Complaint**

On June 26, 2023, Mr. Foster filed his Second Amended Complaint. (ECF No. 42). Despite the Magistrate Judge's Order, Mr. Foster continued to submit filings in August, September, and October of 2023, all of which the Magistrate Judge struck in October pursuant to the prior Order prohibiting further filing. (ECF No. 46; *see* ECF Nos. 43–45). Despite this, Mr. Foster resumed filing in December of 2023, and continued submitting filings until May 2024. (*See* ECF Nos. 47, 49–52). The Magistrate Judge struck these additional filings on July 25, 2024, in the Order and Report and Recommendation on the Second Amended Complaint. (ECF No. 53).

In that Report and Recommendation, the Magistrate Judge recommended this Court dismiss Mr. Foster's Section 1983 claims with prejudice, and all other claims without prejudice. The Magistrate Judge also recommended that Mr. Foster be given "one final" opportunity to "assert claims that have a nexus to the claimed imminent danger of serious physical injury (lack of medical treatment for chronic pain), are asserted against proper defendants, and contain factual allegations sufficient to state a plausible claim upon which relief may be granted." (ECF No. 53 at 18). Specifically, Mr. Foster would need to describe: (1) the chronic pain left untreated; (2) how treatment was denied; and (3) how that denial led to imminent danger of serious physical injury. (*Id.* at 10). Mr. Foster would also need to connect the alleged imminent danger from lack of treatment to the defendants' conduct. (*Id.* at 13). Otherwise, Mr. Foster's *in forma pauperis* action would be improper. (*See* ECF No. 83 at 5).

Mr. Foster filed his objections to the Magistrate Judge's Report and Recommendations on August 14, 2024. (ECF No. 58). Then, he filed his "Third Amended Emergency Complaint" on August 20, (ECF No. 60), a "Motion to Stay, Motion for Temporary Restraining Order" on

3

August 28, (ECF No. 61), a "Motion to Add to [ECF No.] 61 Good Faith" on September 5, and "Part Two" of his Third Amended Complaint on September 9, 2024. (ECF No. 63).

Mr. Foster's Fall filings continued. He filed a "Motion for Recommittal" following ECF Nos. 61 and 62 on September 19, 2024, (ECF No. 64), a "Good Faith Enlargement Motion *Pro Se*" on September 26, (ECF No. 65), a "Reques[t] for Court on Basis of *Castro* Theory" on October 10, (ECF No. 66) a "Motion for Court to Proceed" on October 11, (ECF No. 67), a Concession "In Part" to the Magistrate Judge's Report and Recommendation on October 16, (ECF No. 68), and a Request for Issuance of Summons to the White House, CoreCivic, and the Department of Justice on October 30, 2024 (ECF No. 69).

On November 5, 2024, the Magistrate Judge ordered Mr. Foster to "stop filing documents in this case until the Court has completed the initial screen of his Third Amended Complaint" unless he had "extraordinary cause," informing Mr. Foster that "[r]e-asserting arguments or attempting to add additional arguments does not constitute extraordinary cause," and directing the Clerk of Court to hold service of the summonses until further order. (ECF No. 70 at 1–2). Mr. Foster objected to this Order, (ECF Nos. 72, 73), and despite it, continued filing additional motions after his objections, including a "Renewed Motion to Proceed While Black" on November 21, (ECF No. 74), an "Extraordinary Rule 65(b) Motion" on December 3, 2024, (ECF No. 75), a "Motion for Court Access" on February 10, 2025, (ECF No. 77), and a "Motion to Consider the Priority Nature of This Matter" along with notice on a change of address to "670 Marion–Williamport E. Road, Marion, Ohio 43302"[3] on February 26, (ECF No. 82).

---

[3] It appears that Mr. Foster was transferred to the ODRC's North Central Correctional Complex in Marion, Ohio. *North Central Correctional Complex (NCCC)*, Ohio Department of Rehabilitation and Correction, https://drc.ohio.gov/about/facilities/north-central-correctional-complex (last visited Sept. 25, 2025). Indeed, months later, Mr. Foster alleged that he had "been placed on three retaliatory transfers since the . . . initiation of this case." (ECF No. 86 at 1).

4

On March 25, 2025, this Court issued its Order (ECF No. 83) adopting the Magistrate Judge's Report and Recommendations regarding the Second Amended Complaint (ECF No. 53), overruling Mr. Foster's objections (ECF No. 58), and denying his stay and temporary restraining order, (ECF Nos. 61, 62). This Court concluded that Mr. Foster failed to establish an imminent danger in his Second Amended Complaint (ECF No. 42) and his Objection (ECF No. 58) to the Magistrate Judge's Report and Recommendation. (ECF No. 83 at 5–6). First, this Court found that Mr. Foster's allegations of danger and death were "general" and insufficient at connecting his Americans with Disabilities Act claims to his supposed lack of treatment for chronic pain. (*Id.* at 6). Next, this Court determined that Mr. Foster's other allegations of insufficient prison personnel for grievances, lack of access to WiFi, and opened mail lacked any connection to a lack of medical treatment for chronic pain. (*Id.*). Without any connection between Mr. Foster's lack of medical treatment for chronic pain to his claims, Mr. Foster's lawsuit could not proceed *in forma pauperis*, and was dismissed. (*Id.*). This Court agreed with the Magistrate Judge's recommendation, however, to afford Mr. Foster a final chance to allege imminent danger **connected to** his chronic pain claims. (*Id.* at 6–7).

This Court also agreed that Mr. Foster had failed to state a claim for relief under the Americans with Disabilities Act against ODRC and Congress, and that Mr. Foster had improperly brought Section 1983 claims against Congress and the ODRC, neither of whom can be sued under 42 U.S.C. § 1983. (*Id.* at 7–8). Last, this Court determined that Mr. Foster had failed to establish, by clear and convincing evidence, a case for a Temporary Restraining Order, and likewise denied the request. (*Id.* at 8–10).

On April 10, Mr. Foster filed notice of a change in his address back to the Northeast Ohio Correctional Center in Youngstown, Ohio (ECF No. 86), and on June 20, he filed a "Motion to be Relieved of ECF No. 83." (ECF No. 87).

On August 27, 2025, the Magistrate Judge issued a Report and Recommendation on the Third Amended Complaint. (ECF No. 88). Meanwhile, presumably due to the mailing time it would take for Mr. Foster to receive the magistrate's Report and Recommendation and for his filings to be received, Mr. Foster's non-objection filings continued. On August 29, he filed a "Motion for Security Waiver" (ECF No. 89), and on September 4, he filed a "Priority Rule 65(b) Motion" (ECF No. 90). On September 8, he filed his objection to the magistrate's Report and Recommendation, styled as "Ohio Revised Code 9.06(k) Objection" (ECF No. 92), and September 22, 2025, he filed an "Emergency Notice" titled "Warning to Magistrate" that also essentially reiterated his "Ohio Revised Code 9.06(k)" objection.[4] (ECF No. 93 at 2).

### C. Third Amended Complaint

Mr. Foster's theory of the case is essentially unchanged. His Third Amended Complaint consists of two filings, which he filed in two parts, styled as an "Emergency Complaint for Joinder" and "Part Two of [the Third Amended Complaint] Timely." (ECF Nos. 60, 63; *see* ECF No. 91). In his "Emergency Complaint for Joinder," Mr. Foster sues the ODRC, CoreCivic, the "Cincinnati Police" Department, "Congress, and the Department of Justice/Attorney General." (ECF No. 60 at 2). He first alleges that the Cincinnati Police Department and ODRC "are liable for implied contractual breach failures of the ADA coextensively through Section 504 in light of

---

[4] Although the Magistrate Judge ordered Mr. Foster to only file "**ONE DOCUMENT**" in objection to the Report and Recommendation, (ECF No. 88 at 10), and Mr. Foster has made a habit out of ignoring the Magistrate Judge's orders regarding his filing limitations, this Court will consider both the "Ohio Revised Code 9.06(k) Objection" and the short subsequent "Warning to Magistrate" in the interests of justice. (ECF Nos. 92, 93).

6

financial assistance conditions," noting that they receive federal funding, and are being sued in a public entity capacity. (*Id.* at 3). Next, he alleges that Congress is also liable for violating the ADA and is also being sued in a public entity capacity. (*Id.*). He then alleges that the Department of Justice "or" the "Attorney General's office" is being sued in an official capacity "for violating the ADA and RA by coextensive means, but not contract type." (*Id.*). Next, he states that ODRC is liable for CoreCivic, and CoreCivic itself is liable for violating the ADA for its hospital and for how it treats Mr. Foster while he participates in Ashland University "within this building."[5] (*Id.*). Mr. Foster alleges that Congress authorized, the Department of Justice and Attorney General supervised, ODRC and the Cincinnati Police "operat[e]," and CoreCivic "acts" to create "a pattern" of "a failure to accommodate, discrimination, etc., exclusion, inaccessibility, practice, policy, failure to train, or custom of policies concerning all parties joined." (*Id.* at 4).

Mr. Foster then recounts the history of the ODRC "ending and returning [his] disability needs" for his medical and accommodation issues from 2014 to 2020. (*Id.* at 4–5). Mr. Foster also discusses an employment suit "regarding an office that will permanently and prospectively suppress an insurrection policy created by then President Trump," arguing that the existence of the "insurrection policy" "caused [Foster] ***actual ongoing imminent danger*** on the basis of [his] disability." (*Id.* at 5) (emphasis added).

Mr. Foster alleges that when he "filed for federal employment" in 2020, the ODRC revoked his "access to chronic care for [his] disability medical needs, food, etc."; that he could not "obtain treatment for [his] severe neuropathy ([gunshot wound]) pain" or gain accessibility accommodation; and that by 2021, the Department of Justice failed to handle his employment complaints, accommodation requests, or "resolve the inaccessible facility issues causing [him] to

---

[5] The "building" appears to be a reference to the Northeast Ohio Correctional Center. (*See* ECF No. 60-3).

7

suffer ongoing untreated severe chronic gunshot wound neuropathy pain" due to a "lack of access to safe mobility routes" that he could "use to participate in the facility without a threat of bodily harm by use of force." (*Id.* at 6–7). Mr. Foster states that he complained to (or possibly filed complaints against) the Department of Justice and Congress from 2019 (or 2020) through 2024, but to no avail. (*Id.* at 8). He also alleges that, **in January 2024**, he was sent to "ODRC's CoreCivic wing,"[6] where he initially received treatment that "helped eliminate a lot of [his] . . . pain," but that this treatment later was stopped, and he was denied other medical treatments for his pain. (*Id.* at 8–11). According to Mr. Foster, at this new facility, he now lacks "a plan on how [he] will manage pain and take [his classes]" at Ashland University; he has been "put in the hole on bogus pretense[s]"; he has been placed in cells without a sink, proper ventilation, accessibility accommodations, or access to the law library; he has fallen in his cell and been injured due to the lack of accommodations; he has nearly missed court deadlines due to lack of law library access; and information has been hidden from him by the police. (*Id.* at 11–14).

Mr. Foster asked for injunctive and declaratory relief in a variety of forms, consisting of: (1) stopping the ODRC from opening his court mail; (2) mandating employment for Foster for "RA also ADA police duties" at the Department of Justice, preparing an "Office of Deterrent Investigation and Enforcement" with jurisdiction to handle Title II concerns, and notifying the entities to be regulated by this office; (3) ordering the ODRC and CoreCivic to provide Foster with "the medical chronic pain benefit the state permits, 28 C.F.R. § 35.152(b)(3)"; (4) permanent relief; (5) the firing of certain CoreCivic employees; (6) the release of certain medical and police records; and (7) $1 in nominal and $20.1 million in compensatory damages. (*Id.* at 15–19).

---

[6] This appears to refer to Mr. Foster's incarceration at the Northeast Ohio Correctional Center.

8

In his "Part Two of [the Third Amended Complaint] Timely," Mr. Foster purports to continue discussing the "Post 2010 ADA amendments issue," but he largely rehashes his prior arguments or raises irrelevant points. (ECF No. 63 at 1). He suggests that President Trump's "insurrection policy" included abandoning "ADA and RA progress" and infringing on the separation of powers with the Article I and III branches of government. (*Id.* at 2). He claims that, in this case, he can "get relief from the imminent danger by eliminating discrimination," including the ODRC's purported denial of his court access from 2015–22. (*Id.*). He restates his claims that he was not adequately treated for "neuropathy [gunshot wound] pain"; was impeded from accessing the law library and the courts; suffered side effects from depression medication; was placed in the hole on false pretenses; was placed in an inadequate, non-accessible cell where he injured himself; was left without proper electronics access; was not medically treated; was not accommodated; and was intentionally discriminated against. (*Id.* at 3–7, 9–11). He seeks additional relief, requesting "buffer zone[s]" be placed in work history and credit reports of CoreCivic employees, compensatory damages from the ODRC, and declaratory relief. (*Id.* at 12–13). He also claims that had he been properly treated, he "likely" would have been "freed from prison," which would have "eliminat[ed] [the] prison context imminent danger in the first place." (*Id.* at 5). He restates a non-specific imminent danger, stating that "the Courts are still pending in my case about this ongoing imminent danger by failure to Act, etc., failure to accommodate." (*Id.* at 8).

This Court is now tasked with a *de novo* review of the Magistrate Judge's Report and Recommendation regarding Mr. Foster's Third Amended Complaint, as well as Mr. Foster's Objections, to determine the central question: whether Mr. Foster has connected his alleged imminent danger to a lack of chronic pain treatment in 2022.

## II. STANDARD OF REVIEW

When reviewing a party's objections to a Report and Recommendation, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In so doing, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

When a plaintiff proceeds *in forma pauperis*, "the court shall dismiss" their complaint or any portion of it that: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). While detailed factual allegations are not necessary at the pleading stage, mere "labels and conclusions" are insufficient to state a proper claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Pro se* complaints are to be construed liberally, but "basic pleading essentials" still are required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see Johnson v. Stewart*, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) ("The liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law.") (citations omitted). Thus, to survive screening, a complaint must contain sufficient facts which, if accepted as true, would plausibly state a claim upon which relief may be granted.

## III. LAW AND ANALYSIS

Under the Prison Litigation Reform Act, when a prisoner "has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted," the prisoner cannot proceed *in forma pauperis* "unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

At the pleading stage, to qualify for an exception to this general bar on prisoners proceeding *in forma pauperis* with three strikes, a prisoner movant must "only . . . assert allegations of imminent danger; he need not affirmatively prove those allegations at this stage." *Tucker v. Pentrich*, 483 F. App'x 28, 30 (6th Cir. 2012). All the movant must allege are facts from which the court "could draw the reasonable inference that [he] was under an existing danger at the time he filed his complaint." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (citation and internal quotation marks omitted). The physical injuries must be "impending," and are "serious" under § 1915(g) when they are with "potentially dangerous consequences such as death or severe bodily harm." *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019).

This Court first addresses the recommendations made by the Magistrate Judge (ECF No. 88) and then Mr. Foster's objections (ECF Nos. 92, 93). In screening Mr. Foster's Third Amended Complaint, the Magistrate Judge recommended that this Court dismiss the complaint without prejudice, deny Mr. Foster's remaining outstanding motions as moot, and terminate the case. (ECF No. 88 at 1). The Magistrate Judge reached this determination noting that: (1) this Court provided Mr. Foster with permission to proceed *in forma pauperis* based on and limited to "allegations that prison medical staff have refused [Plaintiff] treatment for his chronic pain conditions," (*id.* at 2 (quoting ECF No. 23 at 7)); (2) that Mr. Foster's Second Amended Complaint failed to allege claims with "a nexus to Plaintiff's allegations that he was denied treatment for his chronic pain condition," (*id.* at 2–3); and (3) that Mr. Foster's Third Amended Complaint still fails to allege any "nexus" between Mr. Foster's claims and the "imminent danger" coming from "the failure to provide medical care for his chronic pain conditions," (*id.* at 6, 7, 9, 10).

11

This Court essentially agrees with the Magistrate Judge's Report and Recommendation, as set forth below.

### A. Voluntary Dismissals

As a threshold matter, the Magistrate Judge construed two of Mr. Foster's filings following his Third Amended Complaint to constitute self-effectuating notices of dismissal of Congress, the Cincinnati Police Department, CoreCivic, and the Department of Justice, as per Fed. R. Civ. P. 41(a)(1). This Court agrees. On October 16, 2024, Mr. Foster "concede[d] to the R&R (ECF No. 53) in part. The only defendants for this case . . . are the White House . . . and the ODRC/CoreCivic defendant, along with the [Department of Justice]." (ECF No. 68 at 1). Subsequently, on February 19, 2025, Mr. Foster sought "to make the complaint smaller" by "dismissing CoreCivic[,] Police[,] [and] [the Department of Justice]." (ECF No. 81 at 1, *see id.* at 9–12 (seeking specific relief only against the ODRC, Congress, and individuals not already named in a complaint)). Mr. Foster does not contest this part of the Magistrate Judge's Report and Recommendation. Thus, the only remaining defendant is ODRC.[7]

### B. Remaining Claims

#### 1. Contractual Claims

The Magistrate Judge construes Mr. Foster's claim that the ODRC is "liable for implied contractual breach failures of the ADA coextensively through Section 504 in light of financial assistance conditions" to be about ODRC's supposed "liab[ility] for CoreCivic," who Mr. Foster suggests incarcerated him "in an inaccessible manner" in violation of the ADA. (ECF No. 60 at 3; *see* ECF No. 88). Although it is unclear exactly what Mr. Foster is suggesting in his

---

[7] Because Mr. Foster was ordered to stop filing additional documents until the Magistrate Judge could screen his Third Amended Complaint, the Magistrate Judge held his summons against the White House.

Complaint, this Court believes the Magistrate Judge may have misconstrued his contractual argument against the ODRC as being solely premised on the ODRC's relationship with CoreCivic. Construed and understood liberally, it appears that Mr. Foster also alleges (based on the Third Amended Complaint and his objections) that the ODRC is contractually obligated to provide him with ADA accommodations either because (1) it is statutorily obligated to do so as the recipient of federal funding, *see* 29 U.S.C. § 794(a); or (2) it has a duty of care to Mr. Foster. (*See* ECF No. 60 at 3–4; 92 at 2–3).

Thus, this Court does not agree that an analysis of Mr. Foster's contractual claims turns solely on the fact that CoreCivic operates the Northeast Ohio Correctional Center, but not the Toledo Correctional Institution. (*See* ECF No. 88 at 5–6). Although the Magistrate Judge is correct that Mr. Foster's claims must have a nexus to the imminent danger, and that the imminent danger must have existed when the case was filed, this claim cannot be dispensed of due to the fact that CoreCivic does not operate the prison where Mr. Foster was incarcerated when he first filed this case. However, Mr. Foster still must connect a legal claim to his allegation of imminent danger. That issue is specific and narrow. As this Court previously laid out, Mr. Foster must demonstrate a legal claim that has a nexus—or a connection or link—to the alleged failure to provide medical care for his chronic pain conditions when he filed the case. (ECF No. 83 at 6). Even though Mr. Foster has repeatedly and tirelessly suggested that the ODRC was contractually obligated, in some way, to accommodate him, he has failed to demonstrate why he was in imminent danger due to the alleged failure to provide him with medical care for his chronic pain conditions when he initiated this case in 2022.

Simply put, neither Foster's argument that he has always been in the custody of the ODRC (ECF No. 92 at 2), nor that Ohio is obligated to accommodate disabilities (ECF No. 92 at

13

2–3), provide any more connection to his alleged imminent danger. Instead, they merely raise the question of what the imminent danger is. It is not enough that Mr. Foster claim "a denial of medical services." (ECF No. 92 at 1). Mr. Foster's suggestion that "an added imminent danger that would occur for [his] decision to grieve also, sue, about this denial" misses the point. (ECF No. 92 at 1). The imminent danger cannot be speculative. This Court has limited Mr. Foster's *in forma pauperis* suit, requiring that he show imminent danger arising from a failure to provide medical care for his chronic pain condition—not claims that might derive out of a denial of medical services more generally.

Mr. Foster's reliance on the Eighth Circuit's decision in *Charron v. Allen* is misplaced. (ECF No. 92 at 1 (citing *Charron*, 37 F.4th 483 (8th Cir. 2022)). Although *Charron* suggested that a plaintiff proceeding *in forma pauperis* could obtain relief for other claims, it presumed that at least one claim "satisf[ied] the imminent danger exception." *Charron*, 37 F.4th at 487; *see Chavis v. Chappius*, 618 F.3d 162, 171–72 (2d Cir. 2010) (clarifying that "a prisoner with three strikes **who adequately alleges imminent danger can**, in the same suit, proceed [*in forma pauperis*] on other claims that lack a nexus to immediate danger") (emphasis added). Here, Mr. Foster's Third Amended Complaint has still "failed to tie his legal claims to allegations of [imminent danger]," and thus, his *in forma pauperis* status can be denied. *Lapine v. Waino*, 2018 WL 6264565, at *2 (6th Cir. Oct. 11, 2018).

To the extent Mr. Foster argues that his case "evolved," citing to the Sixth Circuit in *Tolliver v. Noble*, he is similarly mistaken. (ECF No. 92 at 1 (citing *Tolliver*, 752 F. App'x 254, 265 (6th Cir. 2018)). *Tolliver* was about a prisoner's **right to amend a complaint**, not about a right to shift the parameters when the court has allowed an *in forma pauperis* suit to proceed on narrow grounds. Mr. Foster still must satisfy the imminent danger pleading requirement for this

14

Court to hear the suit he filed in 2022. For instance, Mr. Foster cannot now allege that "imminent danger can be the result of a public entity using legal mail trade secret intelligence[] to assist . . . interference efforts," (ECF No. 92 at 1), because that is not related to a failure to provide medical care for his chronic pain condition.

Put another way—Mr. Foster filed this action in on May 11, 2022, claiming to be in imminent danger and seeking leave to file *in forma pauperis*. (ECF No. 1 at 1, 4; ECF No. 4 at 2). He has been told by this Court time and again that he must show that he was in imminent danger in 2022 because of the alleged failure to provide medical care for his chronic pain conditions. (ECF No. 23, 83). He has failed to do so.

2.  *Employment Claims*

This Court agrees with the Magistrate Judge regarding Mr. Foster's employment claims. It is unclear what, precisely, Mr. Foster means when he discusses the "insurrection policy," but it appears he is suggesting that he might not have been placed in future imminent harm had he been able to investigate and enforce federally-funded operations overseeing disability policy. (ECF No. 60 at 5–7).

Again, this Court has limited Mr. Foster's potential *in forma pauperis* claim for imminent danger arising from a failure to provide medical care for his chronic pain condition as it was in 2022—the Court will not entertain Mr. Foster's suggestion that the imminent harm derives from the Department of Justice's rejection of his "employment accommodation complaint[] in 2020," (ECF No. 60 at 5), untethered to specific allegations of how this led to denial of his treatment **and placed him in imminent danger in 2022**. It is insufficient for Mr. Foster's suit that he believes he is in "imminent danger about matters of interference about his civil suit[] and grievance filings," (ECF No. 92 at 4), just as President Trump's actions (or inactions) and the

15

legal status of those who were at the U.S. Capitol on January 6, 2021, (*see* ECF No. 92 at 5–6), are simply irrelevant here.

### 3. *Denial of Treatment Claims*

The Magistrate Judge's analysis next focused on Mr. Foster's denial of treatment claims. The Magistrate Judge analyzed Mr. Foster's allegations under Section 1983 and Title II of the ADA. This Court does not disagree with the Magistrate Judge's analysis, or the conclusion that Mr. Foster's allegations here are insufficient, particularly in light of Mr. Foster's "vague and conclusory allegations." (ECF No. 88 at 8). Indeed, though Mr. Foster alleges that treatment for his "disability medical needs" was ended around April 1, 2020, and that his "access to the route needed to continue getting to [the] medical hospital of the facility" was discontinued, he next discusses his medical treatment in February of 2024. (ECF No. 60 at 6, 8–9). Mr. Foster provides no concrete allegations about the state of his medical care in May of 2022 or around that time, when he first brought this action. (*Accord* ECF No. 88 at 9).

Though Mr. Foster objects that "part of [his] imminent danger, was his ongoing exposure to a denial of pain disease neuropathy medical services," (ECF No. 92 at 7), his objection does not provide this Court with any more detail regarding his supposed denial of treatment. As this Court previously noted, Mr. Foster "has not shown ***why***" he "would be in 'danger of more serious afflictions if he [was] not treated' for his chronic pain." (ECF No. 83 at 6 (quoting *Vandiver*, 727 F.3d at 586)) (emphasis added). He has also failed to make factual allegations about what was happening to him ***in 2022***. Mr. Foster has only served to repeat his general allegation, rather than elaborate or explain it.

####            4.         *Post-filing Claims*

Last, the Magistrate Judge determined that Mr. Foster's post-filing claims could not provide the required nexus to his claimed imminent harm when he brought this case in May 2022. (ECF No. 88 at 9). This Court agrees. Mr. Foster's allegations about the medical treatment he has or has not received since 2022, along with his other treatments more generally, cannot provide the basis for his claimed imminent harm, made in 2022, in his *in forma pauperis* suit. To the extent Mr. Foster claims that his legal mail was surveilled at the Toledo prison, (ECF No. 92 at 9; 93 at 1); that he was placed in an "inoperable cell," "harsh" in combination with his neuropathy, with an inaccessible toilet, (ECF No. 92 at 11); that officers have harmed him for suing in the past, harmed him worse for this case, "and will do it again," (ECF No. 92 at 7–8); that a variety of staff attacked him on or about March 29, 2025, and "claimed [this attack] would not be taking place if [Foster] simply dropped the lawsuit," (ECF No. 92 at 15); or that he has been moved around from prison to prison or could be "return[ed] . . . to MTC," (ECF No. 93 at 3); none of these allegations are relevant or sufficient to establish the supposed imminent harm he was under due to his chronic pain condition in 2022.

Mr. Foster suggests that "at the time when [he] filed this case, in 2022 . . . *[he] was in imminent danger of all these issues taking place in response to his filing this case about imminent danger* as to his ongoing exposure to a denial of neuropathy disability medical services." (ECF No. 92 at 15–16) (emphasis added). This is the colloquial chicken-and-egg problem—Mr. Foster suggests that his imminent danger *arose* from his filing the case about imminent danger. Mr. Foster has failed to allege and show that it was the ongoing denial of prison medical staff to treat Mr. Foster's chronic pain condition that was the cause of his imminent danger in 2022. It was his obligation to "allege[] facts from which [this] [C]ourt,

17

Case: 2:22-cv-02153-ALM-CHG Doc #: 94 Filed: 09/30/25 Page: 18 of 19 PAGEID #: 875

informed by its judicial experience and common sense, could draw the reasonable inference that [he] was **under an existing danger at the time he filed his complaint**." *Vandiver*, 727 F.3d at 585 (emphasis added). This means that the danger cannot originate in response to Mr. Foster's filing of the complaint.

### C. Plaintiff's Objections and Findings

Mr. Foster's objections largely acquiesce or substantively fail to contest the Report and Recommendation. Crucially, Mr. Foster still has not connected or linked his allegation of imminent danger to his chronic pain condition in 2022 when he initiated this case. *See Frazier v. Woods*, 2020 WL 9263004, at *3 (6th Cir. Nov. 10, 2020) ("Because [plaintiff's] objections did not specifically address the magistrate judge's findings or conclusions, [he] has arguably waived further review of his . . . claims."). Instead, Mr. Foster has used this forum to bring up wide-ranging and varied grievances. As this Court has previously noted, it is sympathetic to Mr. Foster, given what he claims. (ECF No. 83 at 9). At least some of Mr. Foster's allegations, if true, raise grave concerns. (*See, e.g.*, ECF No. 92 at 15 (alleging that more than five prison staff members "unleashed a full fledged attack on [Foster] while he was on mental health observation in medical" and "claim[ing] it would not be taking place if [he] simply dropped the lawsuit")). However, this Court must determine whether Mr. Foster has sufficiently shown imminent danger related to his allegations that prison medical staff refused his treatment for chronic pain conditions. Mr. Foster alleged this when he brought this suit, and that was the sole basis for imminent danger that this Court permitted him to proceed on an *in forma pauperis* basis.

Mr. Foster has not made the required showing of a nexus between his claims in 2022 and imminent harm. He is not permitted to cite to supposed imminent harms separate from what he alleged about his chronic medical condition when he brought this suit.

18

## IV. CONCLUSION

Accordingly, this Court **ADOPTS** the Report and Recommendation (ECF No. 88) **AS MODIFIED** above. Plaintiff's Objections (ECF Nos. 92, 93) are **OVERRULED**. Plaintiff's Third Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's remaining outstanding motions (ECF Nos. 64, 74, 75, 77, 82, 87, 89, and 90) are **DENIED AS MOOT**. The Clerk of Court is **DIRECTED TO TERMINATE** this case.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2025**