**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER FOSTER,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:22-cv-02153** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, *et al*.,** | : | **Magistrate Judge Caroline H. Gentry** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter comes before this Court on *pro se* Plaintiff Christopher Foster's post-judgment motions seeking relief from and reconsideration of this Court's decision dismissing the case. (ECF Nos. 96; 97; 98; 99). For the following reasons, these Motions are **DENIED**.

## I. BACKGROUND

Christopher Foster is an inmate at the Northeast Ohio Correctional Center in Youngstown, Ohio. He brought this suit in May 2022 and sought to proceed *in forma pauperis*—that is, without paying the required filing fee—on the grounds that he was indigent and unable to pay. (*See* ECF No. 1). Because Foster had brought at least three prior actions that were dismissed for being frivolous, malicious, or for failure to state a claim upon which relief could be granted while he was incarcerated, (ECF No. 4 at 3), his ability to proceed *in forma pauperis* was sharply circumscribed by the Prison Litigation Reform Act of 1995 ("PLRA"). The Prison Litigation Reform Act provides, in relevant part:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the *in forma pauperis* statute] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds

> that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). As this Court has repeatedly explained to Foster, the PLRA only permits him to proceed *in forma pauperis* "after showing that he was under imminent danger of serious physical injury." *Foster v. Ohio Dep't of Rehabilitation and Correction*, 2025 WL 2778259, at *1 (S.D. Ohio Sept. 30, 2025) (Marbley, J.) (ECF No. 94) (citations and internal quotation marks omitted). In February 2023, this Court gave Foster that opportunity, explaining that although certain of his allegations could not "qualify as an imminent injury because [those conditions were] not in existence when Foster filed his complaint and motion for IFP status," he *could* proceed on the basis of his "allegations that prison medical staff have refused him treatment for his chronic pain conditions," as such allegations could be sufficient to make the showing of imminent danger of serious physical injury. *Foster v. Ohio Dep't of Rehabilitation and Correction*, 2023 WL 1960168, at *3–4 (S.D. Ohio Feb. 13, 2023) (Marbley, J.) (ECF No. 23).

Since then, Foster has had numerous opportunities to explain how, in 2022, when he originally filed this suit, he was in imminent danger of serious physical injury. He has failed to do so. As the Magistrate Judge explained in a July 25, 2024 Report and Recommendation, Foster's amended complaint had to be dismissed under the PLRA because he had failed to raise allegations with "a nexus to the claimed imminent danger of serious physical injury (lack of treatment for chronic pain)." (ECF No. 53 at 10–13, 18). This Court "agree[d] with the Magistrate Judge[]" that Foster had not established the imminent danger in his amended pleading. *Foster v. Ohio Dep't of Rehabilitation and Correction*, 2025 WL 899039, at *3, *5 (S.D. Ohio Mar. 25, 2025) (Marbley, J.) (ECF No. 83). Foster filed a Third Amended Complaint, which the Magistrate Judge also recommended dismissing, explaining that the newest complaint "still fail[ed] to allege any 'nexus' between Foster's claims and the 'imminent

danger' coming from 'the failure to provide medical care for his chronic pain conditions.'" (ECF No. 88 at 1, 6–7, 9–10). In that Third Amended Complaint, Foster repeatedly tried advance arguments regarding new sources of imminent danger. For example, he raised issues regarding interference with his prison mail, claiming that qualified to create imminent danger. In adopting the Magistrate Judge's Report and Recommendation regarding Foster's Third Amended Complaint and ultimately terminating this case, this Court explained:

> Mr. Foster filed this action [in May 2022] claiming to be in imminent danger and seeking leave to file *in forma pauperis*. He has been told by this Court time and again that he must show that he was in imminent danger in 2022 because of the alleged failure to provide medical care for his chronic pain conditions. He has failed to do so. . . . [and] [h]e is not permitted to cite to supposed imminent harms separate from what he alleged about his chronic medical condition when he brought this suit.

*Foster*, 2025 WL 2778259, at *7, *9.

Foster now seeks reconsideration of this Court's decision terminating the case and entering judgment through four separate filings. (ECF Nos. 96; 97; 98; 99).

## II. LAW & ANALYSIS

Although Foster requests "reconsideration," his motions are better understood as seeking post-judgment relief, because motions for reconsideration address "interlocutory judgments" entered prior to final judgment. *Rodriguez v. Tenn. Labs. Health & Welfare Fund*, 89 F. App'x 949, 951 (6th Cir. 2004). Since judgment has already issued in this case, (*see* ECF No. 95), this Court will construe Foster's motions as seeking post-judgment relief pursuant to Federal Rules of Civil Procedure 59 and 60, consistent with its obligation to construe *pro se* filings "liberally." *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992) ("We construe Williams' letter requesting reconsideration as a motion for relief from judgment under Fed. R. Civ. P. 60(b).").

### A. Standard of Review

Rule 59 provides procedures for altering or amending a judgment. *See* Fed. R. Civ. P. 59(e). Courts "may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (Marbley, J., by designation).

Meanwhile, Rule 60 of the Federal Rules of Civil Procedure provides procedures for seeking relief from a final judgment. In addition to clerical errors, Rule 60 permits relief based on: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time for a new trial; (3) fraud, misrepresentation, or misconduct by the opposing side; (4) voidness; (5) the judgment's satisfaction, release, or discharge; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b).

### B. Application

#### *1. Motions for Reconsideration*

In his first motion, filed on October 7, 2025, Foster requests reconsideration on the basis that he is entitled to treatment for his ailments pursuant to state law permitting use of "a particular medication"—specifically, marijuana. (ECF No. 96 at 1–2). In support, he cites to a state law definition used in Chapter 3796 of Title 37, which lists "Chronic and Severe" as a "Qualifying medical condition," Ohio Rev. Code § 3796.01(A)(6)(m)(i), presumably for marijuana use. Foster also cites to a definition of "medically necessary" as used in a prison administration rule governing the schedule of health care services, which notes that the term:

> [A]s used in this rule means care without which the offender could not be maintained without significant risk of loss of life, loss of limb, or significant bodily function. It also includes care without which one could expect significant

> pain or discomfort, further serious deterioration of the offender's medical status and/or a significant reduction in the change of successful repair after release.

Ohio Admin. Code Rule 2120-9-60(B). Foster argues "[t]hat is an issue of affirmative defense." (ECF No. 96 at 2). He then poses a series of questions to this Court, suggesting that he has not been allowed to amend his complaint. (*Id.* at 3–5).

Shortly thereafter, on October 14, 2025, Foster submitted an amended motion seeking reconsideration purporting to be raised under Rule 59, claiming that he "wanted to complain about the imminent danger with mail from courts being taken, but [he] had been impeded from doing so until this Court gave [him] witness protection." (ECF No. 97 at 1) (citation omitted; cleaned up). He also argues that his amendments to his complaint were "coerced" as his own attempts to amend were not respected, and requests leave to amend again on the basis that amendment would not be futile. (*Id.* at 2–3).

Both motions fail. First, these two motions are fatally deficient because they do not make clear the legal basis for the relief sought, and it is a local rule of this Court that "[a]ll motions and applications tendered for filing shall be accompanied by a memorandum in support thereof that shall be a brief statement of the grounds, with citation of authorities relied upon." S.D. Ohio Civ. R. 7.2(a)(1). Although the second motion references Rule 59 in its caption, it does not make clear what type of Rule 59 relief is being sought. At any rate, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). While Foster provides a new gloss on his mail interference arguments by contending that he needed witness protection, he advanced some form of his mail interference arguments previously, and Rule 59(e) is not a vehicle "to raise arguments which could, and should, have been made before judgment issued." *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992). To the extent that Foster claims he was unable to amend his

pleadings, he has had many bites at the proverbial apple when it comes to attempting to cure, and amended and supplemented his complaint multiple times to no avail. (*See* ECF Nos. 8; 12; 42; 60; 63; *see also* ECF No. 91). This Court has already tirelessly explained why Foster's pleadings must conform to the requirements of the PLRA, but Foster has not wanted to hear it. *See Foster*, 2025 WL 2778259, at *7 (explaining the failings of Foster's Third Amended Complaint and detailing why further amendment appeared futile).

Although *pro se* litigants are given more latitude than parties proceeding counseled by lawyers, they do not benefit from any "lenient treatment of substantive law." *Johnson v. Stewart*, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010). Foster has "not identified any viable factual or legal grounds for setting aside the judgment in this case pursuant to Rule 60(b)" or Rule 59(e), and all of his arguments "offered in support of his motions are incomprehensible, irrelevant, or unsupported." *Miller v. Minnesota*, 2009 WL 3062012, at *1 (D. Minn. Sept. 19, 2009); *Gilani v. Hewlett-Packard Co.*, 2022 WL 1078881, at *2 (S.D.N.Y. Apr. 6, 2022) (rejecting *pro se* plaintiff's filings that were "garbled and incomprehensible"). Both of these motions offer an "incomprehensible grab-bag of disjointed references to various statutes, . . . legal doctrines, judicial rulings, and the like. . . . [Foster] has eschewed any sort of straightforward response" to this Court's final judgment and opinion. *Nasser El v. Smith*, 2012 WL 313985, at *3 (E.D. Mich. Jan. 31, 2012). For example, Foster has relied on *definitions* found within state laws and regulations to claim a right to use marijuana, but these definitions do not show any legal right or entitlement on his part. Moreover, they do not cure the fundamental nexus problem in his pleading.

While this Court "appreciates that the legal system can be difficult for a layperson to navigate," Foster "appears intent on obscuring the nature of and factual basis for" his motions for

post-judgment relief, which "cite[] a litany" of sources but fail to provide any basis for relief, or even explain the type of relief sought. *Id.* Moreover, Foster is no stranger to litigation in federal courts, as discussed in Section II(C), *infra*. It is not the job of this Court to flesh out Foster's possible arguments when he advances bare-bones and difficult-to-decipher motions, *see McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997), so these motions are denied.

### *2. Motion to Expedite*

On November 17, 2025, Foster filed a motion seeking to expedite his case, arguing that his case should be prioritized under 28 U.S.C. § 1657(a). (ECF No. 98 at 1–2).

This request fails because this Court has issued judgment and terminated the case. Section 1657(a) provides that "each court . . . shall determine the order in which civil actions are heard and determined," with exceptions for expediting certain types of cases, cases involving emergency motions, as well as "any other action if good cause therefor is shown." 28 U.S.C. § 1657(a). Foster's case has been determined, and he has not shown good cause as to why his motions challenging the final judgment should be expedited. *See* 9 Cyc. of Fed. Proc. § 31:22 (3d ed. Aug. 2026) ("The advancement of cases . . . is within the discretion of the trial court. . . . A motion to advance a cause . . . will not be granted as of course . . . and the court will determine the matter from the pleadings and the record.").

### *3. Rule 60(b)(6) Motion*

Finally and most recently, on August 7, 2026, Foster moved for relief pursuant to Rule 60(b)(6), purporting to offer evidence of Defendant's confession to breach of contract. (ECF No. 99 at 1–7). Foster's proffered evidence appears to consist of excerpts from his inmate grievance kites submitted alleging violations of Ohio state law, and excerpts of the responses from prison officials. (*Id.* at 8–19).

This request fails because Foster has not shown he is anywhere near the high threshold for relief under Rule 60(b)(6). Rule 60(b)(6) authorizes relief from a final judgment for "any other reason that justifies relief" beyond the previous reasons enumerated under Rule 60(b). It is a catchall rule, meant to apply "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). Thus, "courts must apply Rule 60(b)(6) relief only in 'unusual and extreme situations where principles of equity *mandate* relief.'" *Id.* (quoting *Olle*, 910 F.2d at 365) (emphasis in original).

To the extent that Foster seeks to obtain relief under Rule 60(b)(6) provision, his challenge fails because he has not demonstrated the extraordinary circumstances necessary for such relief. His proffered exhibits appear to be his own narratives submitted to prison employees via grievance, which are then reiterated by the prison employees in their process of addressing and dismissing the grievance. Foster's argument is once again difficult to decipher, but he appears to claim to be the assignee of $5.4 billion in contracts created by former Treasury Secretary Janet Yellen. While Foster may be making a creative argument, he has not explained that argument to this Court. He has not shown that there is any merit to this purported contract assignment, or explain how it could replace his nexus requirement. Foster "has offered this Court nothing that could lend coherent substance to the case or might present a developed argument," but instead has presented a "surreal" narrative that is bizarre and illogical to the extent that it is comprehensible. *Hutchison v. Biden*, 2026 WL 265628, at *3 (S.D. Ohio Feb. 2, 2026) (Marbley, J.) (cleaned up). Rule 60(b) "does not provide relief simply because litigants belatedly present new facts or arguments after the district court has made its final ruling." *Jinks*

*v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001). And Foster's arguments are "so confused, ambiguous, vague, or otherwise unintelligible that [their] true substance, if any, is well disguised." *Williamson v. Owners Resort & Exchange*, 90 F. App'x 342, 345 (10th Cir. 2004) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). Accordingly, this motion is summarily denied. *Miller*, 2009 WL 3062012, at *1.

**C. Vexatious Litigation**

Next, this Court raises *sua sponte* whether Foster is a vexatious litigant who should have pre-filing restrictions imposed on him for future litigation. Courts may impose prefiling restrictions on vexatious litigants to stop the flow of meritless filings and "handle the complaints of prolific litigators." *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987). Particularly where monetary sanctions might have no effect, as would be the case for plaintiffs filing *in forma pauperis*, courts may issue injunctions to prevent harassing litigation under their inherent authority and pursuant to the All Writs Act. *See Wrenn v. Vanderbilt Univ. Hosp.*, 1995 WL 111480, at *3 (6th Cir. Mar. 15, 1995) (observing that there is no right of access to the courts to prosecute frivolous or malicious actions); 28 U.S.C. § 1651(a) (Courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."). Before imposing a pre-filing restriction, a district court "must still justify its rationale sufficiently" by identifying the litigant's pattern of repetitive, frivolous, or vexatious filings. *United States v. Petlechkov*, 72 F.4th 699, 710 (6th Cir. 2023).

Foster is no stranger to litigating in federal court. As one federal judge put it, he is a "prolific" *pro se* litigant. *Foster v. Smucker*, 2025 WL 2656521, at *1 (N.D. Ohio Sept. 17, 2025). Another federal judge was blunter, noting that Foster has been "the beneficiary of the Court's patience for over a decade." *Foster v. CoreCivic, Inc.*, 2026 WL 1881034, at *2 (N.D.

Ohio June 30, 2026). A third federal judge warned Foster that repetitive motions seeking post-judgment relief "may result in the entry of an order instructing the Clerk of Court to refuse to accept and file any other filings from Foster without prior leave of court." *Foster v. Trump*, 2024 WL 1765511, at *1 (N.D. Ohio Apr. 24, 2024). And on June 11, 2026, Foster was declared to be a vexatious litigant by the U.S. District Court for the Northern District of Ohio. After observing that he had brought "at least thirteen unfounded *pro se* complaints in the Northern District of Ohio," and "has further filed at least twenty-one unfounded complaints in the Southern District of Ohio," Judge Benita Pearson designated Christopher Foster as a vexatious litigant and imposed filing restrictions on him, "based on his disreputable conduct over the last twelve years in state and federal courts across the country." *Foster v. Off. of Chief Inspector, Ohio Dep't of Rehabilitation & Corr.*, 2026 WL 1694287, at *3 (N.D. Ohio June 11, 2026).

In this case, Foster was first ordered to stop filing documents, absent extraordinary circumstances, in June 2023, so the Magistrate Judge could conduct the required initial screening of his Second Amended Complaint. (ECF No. 41 at 7). Despite that order, Foster continued to submit filings in August, September, and October of 2023, (*see* ECF Nos. 43–45), all of which the Magistrate Judge struck from the record. (ECF No. 46). Foster resumed filing in December of 2023 and continued submitting filings until May 2024. (*See* ECF Nos. 47; 49–52). The Magistrate Judge struck these additional filings, too. (ECF No. 53). After he submitted his Third Amended Complaint, Foster was ordered once again to stop filing further documents until his new pleading could be screened. (ECF No. 70 at 1). Undeterred, Foster continued filing documents in November and December of 2024, and January and February of 2025. (*See* ECF Nos. 71, 74–77, 82). In many of his filings, including at least three styled as "Requests to Proceed While Black," (ECF Nos. 5; 31; 74), Foster has digressed about subjects wholly

irrelevant to his case, including his thoughts on racial discrimination at Yale University and Kalamazoo College. Moreover, he has repeatedly accused the Magistrate Judge of being "racially charged," (ECF No. 74 at 4), and this Court of "being racist to [him]," (ECF No. 31 at 5).

In sum, Foster has repeatedly failed to adhere to Court orders and has unnecessarily burdened the judiciary with repetitive, premature, and irrelevant filings. He has already been found to be a vexatious litigant in the Northern District of Ohio. This Court weighs his experience as a litigant in determining whether a sanction is appropriate for wasting judicial resources. *See generally In re McDonald*, 489 U.S. 180 (1989) (per curiam) ("Every paper filed . . . no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice."). Foster has ignored Court orders and warnings, and has flooded this Court with motions that are frivolous, duplicative, and sometimes disrespectful. He has no right to do so, and his actions "divert the federal courts' attention and resources from [actions] that are brought in good faith." *Wrenn*, 1995 WL 111480, at *3. This Court has inherent authority under the All Writs Act to enjoin harassing litigation, and will do so in Foster's case.

This Court finds that Christopher Foster is a vexatious litigator, and shall be subject to prefiling restrictions in any future cases that he may initiate in this Court. Christopher Foster is **ENJOINED AND PROHIBITED** from initiating future cases in this Court unless he:

i. Submits a statement from an attorney licensed to practice in the United States District Court for the Southern District of Ohio certifying that the filing is not frivolous, duplicative, or brought for an improper purpose; or

ii. Seeks and obtains leave of the Court for permission, by first filing a "Motion Pursuant to Court Order Seeking Leave to File" with his proposed filings included.

Any future case that Foster initiates in this Court **SHALL** include: (1) a copy of this Opinion and Order; and (2) an exhibit listing the case name, case number, and court of every suit that Foster has filed (or has had filed on his behalf) in any state or federal court, along with the names of every defendant in every suit. Foster's failure to comply with this pre-filing restriction shall be sufficient grounds for the closure of any newly-initiated case, and may lead to punishment for contempt of Court. Absent compliance with the above restrictions, the Clerk of Court **SHALL NOT** accept future *pro se* filings from Christopher Foster, and is instructed to dispose of non-compliant documents accordingly.

## III. CONCLUSION

Plaintiff Christopher Foster's Motions to Reconsider and Motions for Relief from Judgment (ECF Nos. 96—99) are **DENIED**. This case remains closed. Christopher Foster is **DECLARED** to be a vexatious litigant in the U.S. District Court for the Southern District of Ohio, and is **ENJOINED AND PROHIBITED** from initiating new lawsuits in this Court unless he complies with the restrictions listed above.

The Court **CERTIFIES** that an appeal of this Order would not be taken in good faith and should not be permitted to proceed *in forma pauperis*. 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 16, 2026**